UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY K. MITCH,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

18-CV-6905-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Mary K. Mitch ("Plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied and Defendant's motion (Dkt. No. 15) is granted.

## BACKGROUND

Plaintiff filed an application for SSI on February 19, 2015, alleging disability since April 2, 2012. (Tr. 192-99)[1] Plaintiff's application was denied at the initial level. She sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Connor O'Brien on January 10, 2018, in Rochester, New York. (Tr. 67-94, 134) ALJ O'Brien heard testimony from Plaintiff, who was represented by counsel, and

---

[1] References to "Tr." are to the administrative record in this case.

from a Vocational Expert ("VE").  (Tr. 67-94, 269-71)  On February 23, 2019, the ALJ issued an Unfavorable Decision.  (Tr. 12-31)  The Appeals Council denied Plaintiff's request for review on October 15, 2018, after which this timely action was filed.  (Tr. 1-6, see Dkt. No. 1)

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health &*

*Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*,

712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional

capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating Plaintiff's claim. Under step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since February 19, 2015. (*Id.*) At step two, the ALJ found that Plaintiff had severe impairments of: (1) degenerative disc disorder, lumbar and cervical; (2) depression; (3)

5

personality disorder; and (4) knee impingement. (Tr. 17) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 18) Before proceeding to step four, the ALJ assessed Plaintiff's RFC:

> I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she requires a sit/stand option that allows for changing position every 45 minutes for up to 5 minutes. She cannot climb a rope, ladder or scaffold; cannot balance on narrow, slippery, or moving surface; and cannot kneel or crawl. She can occasionally stoop, crouch, and climb stairs or ramps. She requires three, additional, short, less-than-five minute breaks in addition to regularly scheduled breaks. She can perform simple tasks [and] make simple work related decision[s]. She can fulfill daily quotas or expectations, but cannot maintain a fast-paced, automated, production line pace.

(Tr. 19)

Proceeding to step four, the ALJ concluded, based upon the testimony of the VE, that Plaintiff was unable to perform her past relevant work as a driver. (Tr. 25) At step five, and after considering testimony from the VE in addition to Plaintiff's age, work experience and RFC, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could have performed such as charge account clerk, document preparer, and order clerk, food beverage. (Tr. 26) Accordingly, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act. (Tr. 27)

### IV. *Plaintiff's Challenges*

Plaintiff argues that remand is required because: (1) the ALJ failed to follow the treating physician and "good reason" rules; and (2) the ALJ failed to evaluate Plaintiff's subjective complaints pursuant to the appropriate legal standard. (*See* Dkt. No. 11-1)

### A. Treating Physician Rule[2]

In this case, the ALJ addressed the opinions of six medical providers: Plaintiff's treating physician Geoffrey Morris, M.D.; treating orthopedist Robert Little, M.D.; consultative examiner Carolyn Ling, M.D.; treating therapists Kathy Collina, LMHC and Todd Mix, LMSW; and consultative examiner Christine Ransom, Ph.D. Plaintiff argues the ALJ "afforded little weight or some weight to every medical opinion" and therefore "relied upon her own lay opinion instead of medical evidence to support the RFC finding." (Dkt. No. 11-1 at 15) The Court addresses each opinion in turn.

With respect to treating physician Dr. Morris, the ALJ wrote:

> Geoffrey G. Morris, M.D., completed physical assessments of the claimant for the Monroe County Department of Social Services in May 2015 and May 2017 (Ex. B20F). In both assessments, Dr. Morris reported that the claimant was very limited in most areas of physical functioning. In 2015, the doctor indicated that the claimant displayed an abnormal gait, squat, and heel/toe walk (Ex. B20F, p. 7). Dr. Morris also had abnormal musculoskeletal and neurological findings (Ex. B20F, p. 9). The doctor opined that the claimant would be unable to participate in activities except treatment and rehabilitation for the following year (Ex. B20F, p. 8). In 2017, Dr. Morris reported abnormal findings with regard to the claimant's gait and musculoskeletal system (Ex. B20F, p. 4). He opined that the claimant was permanently disabled because of back pain, knee pain, and depression (Ex. B20F, p. 2).

(Tr. 21-22)

The ALJ afforded "some weight" to Dr. Morris' assessments because they were "inconsistent with treatment notes." (Tr. 21) She cited to specific records in support of her finding, for example, in "March 2015, treatment records indicate that the claimant had

---

[2] Under the pertinent regulations in place at the time of Plaintiff's application, the treating physician rule "generally requires deference to the medical opinions of a [Plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]").

7

normal strength, normal reflexes, and a normal gait. She did not display any sensory deficits." (Tr. 21; 278) The ALJ also noted that "[e]pidural injections have successfully reduced the claimant's pain," and concluded that the "record shows that, with treatment, the claimant is able to function at a job limited to sedentary exertion." (Tr. 21-22; 518) Contrary to Plaintiff's assertion that the ALJ engaged in "selective citation to normal objective findings," see Dkt. No., 11-1 at 17-18, a review of the record reveals multiple instances of normal objective findings, and the ALJ was permitted to consider these when formulating the RFC. See generally Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Additionally, the ALJ prefaced her evaluation of the opinion evidence with a summary of the medical evidence relating to Plaintiff's back and knee impairments:

> An MRI showed a herniated disc at C5-6, with the right side worse than the left (Ex. B7F, p. 2). She did not respond to Prednisone or Gabapentin (Ex. B4F, p. 5). An MRI of the claimant's lumbar spine, conducted on March 4, 2015, showed right central disc extrusion at L4-5 with moderate right lateral recess encroachment and moderate central canal narrowing and mild-to-moderate bilateral neuroforaminal narrowing at L4-5 (Ex. B1F, p. 8). An updated MRI, conducted in January 2016, was similar to the previous MRI. It showed a right paracentral disc extrusion with resulting moderate canal stenosis with the disc extrusion adjacent to the right L5 nerve root (Ex. B11F, p. 12).
>
> The claimant has patellofemoral pain syndrome in her right knee, which causes patellofemoral instability (Ex. B5F, p. 9). In March 2014, the claimant underwent right knee diagnostic arthroscopy (Ex. B5F, pp. 17, 35). She underwent an additional arthroscopic surgery in April 2015 (Ex. B21F, p. 23). Nevertheless, she continues to experience some discomfort (Ex. B11F, p. 1). An MRI of the claimant's knee showed no meniscal pathology (Ex. B5F, p. 8). The claimant has been treated with injections to her knee (Ex. B5F, p. 24). The claimant has been treated with injections in her back and knee. She stated that she continues to receive injections in her knee every six months (Testimony).

(Tr. 21) As indicated above, the ALJ adequately discussed the record in context, and did not cite exclusively to normal examination results to support the RFC assessment.

Plaintiff also argues that the ALJ failed to provide good reasons for not affording controlling weight to the assessments from Dr. Morris. (Dkt. No. 11-1 at 17) It is true that an ALJ must provide good reasons when not assigning controlling weight to a treating-source opinion. *See* 20 C.F.R. § 416.927(c) In this regard, an ALJ is required to "explicitly consider" the following regulatory factors at 20 C.F.R. § 416.927(c)(1)-(5) when assigning other than controlling weight to the opinion of a treating physician: (1) the frequency, length, nature, and extent of the treatment relationship; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d 117, 129 (citing 20 C.F.R. § 404.1527(c)(2)) (other citations omitted). The *Estrella* court concluded that an error in failing to explicitly consider these required-factors would be considered harmless if a "searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). Here, it is apparent that ALJ considered the regulatory factors, and the treating physician rule was not traversed.

As discussed above, the ALJ explicitly discussed the medical evidence in support of Dr. Morris' opinion as well as the opinion's consistency with the balance of the record evidence. In the two assessments from Dr. Morris, he indicated that he had treated Plaintiff since sometime in the 1990s, which the ALJ reviewed and evaluated. (Tr. 21;

9

542, 547) In doing so, the ALJ specifically acknowledged that Dr. Morris "is the claimant's treating physician." (Tr. 21) It therefore cannot be said that the ALJ neglected to consider the length and nature of Plaintiff's treatment relationship with Dr. Morris as Plaintiff suggests in her brief. (Dkt. No. 11-1 at 18)

With respect to treating orthopedist Dr. Little, the ALJ afforded "little weight" to his opinion that Plaintiff could not perform sedentary work. (Tr. 22, 397-98) In discounting Dr. Little's assessment, the ALJ noted that "Dr. Little reported that the claimant had bilateral knee osteoarthritis, and that her prognosis was good," but also "indicated that the claimant's experience of pain and other symptoms was constantly severe enough to interfere with the attention and concentration needed to perform even simple work tasks." (Tr. 22) Though Dr. Little referenced herniated discs in the back and neck, the ALJ also observed that "Dr. Little reported that his opinion was based on an interview with the claimant." (Tr. 22; 397 ("per patient interview")) The ALJ acknowledged the treating relationship but ultimately concluded Dr. Little's assessment was "inconsistent with the other medical evidence demonstrating far less limitations. The opinion is not internally consistent and is not supported by the record." (Tr. 22) She therefore provided good reasons for discounting the treating physician's opinion. *See Ratliff v. Barnhart*, 92 Fed. Appx. 838 (2d Cir. 2004) ("Given that this opinion was based solely on Ratliff's representations rather than Dr. Adelson's first-hand observations, and in any event provides no evidence as to Ratliff's condition in 1991, the ALJ was correct in not giving Adelson's opinion controlling weight."); *see also* 20 C.F.R. § 416.927(d)(4) (opinion that is consistent with the record as a whole is generally entitled to more weight); *Legg v. Colvin*, 574 Fed. Appx. 48, 49 (2d Cir. 2014) (ALJ demonstrates good reason for giving

little weight to the opinion of a treating physician where the opinion is inconsistent with the source's own treatment notes).

Plaintiff underwent a consultative examination with Dr. Ling on June 8, 2015. (Tr. 375-80) Dr. Ling recorded Plaintiff's medical history and complaints of neck pain, low back pain, fibromyalgia, and knee pain. (Tr. 375-76) Her activities of daily living included cooking seven days per week, cleaning, doing laundry, and shopping once per month. She showered once every two weeks, dressed twice per week, and watched TV. (Tr. 376) On examination, Plaintiff's general appearance, gait, and station were normal. (*Id.*) Remarkable results included straight leg raise positive on the right and confirmed in the seated position. Right knee range of motion was limited. She had a total of 10 trigger points. (Tr. 378) Dr. Ling opined:

> [Plaintiff] has moderate limitation to prolonged standing, walking, squatting, and kneeling secondary to her right knee pain. She also has moderate limitation from bending at the waist, twisting at the waist, lifting and carrying secondary to her low back pain. She also has moderate limitation secondary to chronic pain of fibromyalgia from activities of daily living.

Plaintiff's prognosis was fair. (Tr. 378)

The ALJ assigned "some weight" to Dr. Ling's opinion because it was "consistent with the evidence of record" and though Dr. Ling "did not specifically define moderate limitations, the assessment did not suggest greater limitations than the restrictions" in the RFC finding. (Tr. 23) Plaintiff complains that Dr. Ling's use of the term "moderate" was unclear and thus, "no reasonable mind would conclude that Dr. Ling's opinion is inconsistent with Dr. Morris' clearly defined opinion." (Dkt. No. 11-1 at 22) Yet the ALJ expressly acknowledged that "moderate" was undefined, and found, in any event, that the assessed limitations were consistent with the formulated RFC of sedentary work with

11

additional restrictions. (Tr. 23) Moreover, courts in this Circuit have found that a moderate limitation in these areas can support the limited range of sedentary work contained in the RFC finding. *See, e.g., Williams v. Colvin*, No. 16-CV-2293, 2017 WL 3701480, at *7 (E.D.N.Y. Aug. 25, 2017) (citing *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 (W.D.N.Y. Feb. 25, 2015) (finding that a medical opinion that a claimant was "moderately" limited in sitting, standing and walking was not inconsistent with the ALJ's residual functional capacity assessment that Plaintiff could sit, stand, and walk for six hours a day)); *Nelson v. Colvin*, 12-CV-1810, 2014 WL 1342964, *12 (E.D.N.Y. Mar. 31, 2014) (an ALJ's finding that a Plaintiff could perform light work was supported by the doctor's opinion that the claimant had mild-to-moderate limitations to her ability to sit, stand and walk) (citing Lewis v. Colvin, 548 Fed. Appx. 675, 678 (2d. Cir. Dec. 17, 2013)); *Hazlewood v. Comm'r of Soc. Sec.*, No. 12-CV-798, 2013 WL 4039419, at *7 (N.D.N.Y. Aug. 6, 2013) (doctor's opinion that Plaintiff had "mild to moderate limitations in walking, pushing, and pulling" supported the "ALJ's determination that Plaintiff could physically perform light work"). Here, the examination results and medical assessment from Dr. Ling supported the ALJ's RFC assessment. *See Pellam v. Astrue*, 208 Fed. Appx. 87, 90 (2d Cir. 2013) (medical opinions of consultative examining physicians can constitute substantial evidence).

Plaintiff also argues that the ALJ failed to provide adequate reasons for rejecting all of the opinions relating to Plaintiff's mental functioning and that "it is unclear what supports the ALJ's RFC finding." (Dkt. No. 11-1 at 26)

Plaintiff's treating counselor, Ms. Collina, prepared a psychological assessment on February 5, 2016. The clinical observations were that Plaintiff was alert and oriented x3,

had spontaneous speech, and was well-groomed. She was assessed with moderate recurrent major depression, alcohol abuse in remission, and personality disorder, NOS. (Tr. 531-32) Ms. Collina opined that Plaintiff was moderately limited (defined as unable to function 10-25% of the time), for the capacity to maintain attention and concentration for rote tasks; had no limitation in following, understanding, and remembering simple instructions/directions; and had no limitation maintaining basic standards of hygiene and grooming. There was insufficient data to assess the other functional areas. (Tr. 532) Ms. Collina concluded that Plaintiff could work 15 hours per week with reasonable accommodations. (*Id.*)

On August 10, 2016, treating social worker Mr. Mix completed a psychological assessment. (Tr. 538-41) Plaintiff's mental status examination showed depressed mood. Concerning functional limitations/clinical observations, she was moderately limited in the following areas: (1) following, understanding and remembering simple instructions and directions; (2) performing simple and complex tasks independently; (3) maintaining attention and concentration for rote tasks; and (4) regularly attending to a routine and maintain a schedule. Plaintiff had no limitations in maintaining basic standards of hygiene and grooming and the capacity to perform low stress and simple tasks. (Tr. 535-36)[3]

The ALJ afforded Ms. Collina's opinion "some weight" because, *inter alia*, nothing in her report or the record supported a conclusion that Plaintiff was limited to working 15 hours per week and that there was insufficient information to determine Plaintiff's capacity in most areas of functioning. (Tr. 24) She gave "little weight" to the opinions of Mr. Mix because they were "internally contradictory and unsupported by the record," citing specific

---

[3] On March 17, 2017, Mr. Mix completed a second assessment which showed identical examination results and functional limitations. (Tr. 538-41)

13

examples. (*Id.*) These opinions from non-acceptable treating sources were not entitled to deference under the pertinent regulations, and, in any event, the ALJ gave good reasons for discounting them with citations to record evidence in support of those reasons. This was not error. *See generally* 20 C.F.R. § 404.1527(f); *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (opinions of non-acceptable medical sources do not demand the same deference as those of a treating physician) (citation omitted).

Plaintiff further contends that "[i]nstead of accepting the conclusions of any medical source, including Dr. Ransom, the ALJ relied upon her own lay opinion." (Dkt. No. 11-1 at 28)

>With respect to Dr. Ransom's consultative opinion, the ALJ stated:
>
>Christine Ransom, Ph.D., performed a psychiatric consultative examination of the claimant for the Social Security Administration in June 2015 (Ex. B6F). The claimant complained of anxiety and depression. Dr. Ransom reported that the claimant's energy level and concentration were good and that the claimant reported that she was interacting with friends and family. The claimant denied panic attacks, manic symptomology, a thought disorder, or cognitive symptoms or deficits. Dr. Ransom reported that the claimant was cooperative and socially appropriate (Ex. B6F, p. 3). The doctor opined that the claimant would be able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, and learn simple new tasks. Dr. Ransom stated that the claimant would have mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress. The doctor indicated that the results of the evaluation appeared to be consistent with a mild psychiatric condition that would not significantly interfere with the claimant's ability to function on a daily basis (Ex. B6F, p. 4).
>
>I accord some weight to the opinion of Dr. Ransom. The record supports the conclusion that the claimant does not have a severe psychiatric impairment. Nevertheless, affording the claimant a broad reading of the record, the combined impact of her physical impairments and the mental impairments create more than *de minimus* symptoms.

(Tr. 23) The ALJ did rely, in part, on Dr. Ransom's opinion, while clarifying that the combined impact of Plaintiff's impairments was more than *de minimus*. (*Id.*) An ALJ is responsible for determining a claimant's RFC based on the entire record, not just medical opinions/assessments. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c). The Second Circuit has held that "[a]lthough an ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, she was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Dr. Ransom's assessed limitations of mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress, are consistent with the RFC limiting Plaintiff to simple tasks, simple work-related decisions, and no fast-paced, automated, or production-line pace. The RFC, in turn, is consistent with the record as a whole. Thus, the Court rejects Plaintiff's argument that the ALJ relied on her own lay opinion to formulate the RFC, and remand is not warranted based on the ALJ's treatment of the opinion evidence.

### B. Consistency Analysis

Finally, Plaintiff challenges the ALJ's evaluation of her subjective complaints, arguing that the ALJ improperly arrived at the RFC before making a consistency assessment. (Dkt. No. 11-1 at 28) Plaintiff's argument is belied by the text of the ALJ's decision.

At the outset of her Decision, the ALJ set forth the standard for determining credibility/consistency and a claimant's subjective complaints. (Tr. 20, citing 20 CFR

15

416.929 and Social Security Ruling ("SSR") 16-3p) She then explained the two-step process.[4] (Tr. 20)

The ALJ discussed Plaintiff's allegations and subjective complaints based on Plaintiff's self-reports and hearing testimony. (Tr. 20-21) She concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, and her impairments created more than minimal limitation in her ability to engage in work activities. However, Plaintiff's statements about the disabling intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence. The formulated RFC addressed her limitations and no additional restrictions were warranted. (Tr. 21) The ALJ followed with a summary of the medical and opinion evidence, and concluded:

> The claimant has impairments, but the record does not show that her impairments are disabling. The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She lives alone, and has not reported any particular help in maintaining the residence. She testified that she stayed with her mother for a week after her mother was in a car accident, to be with her if she needed a glass of water and to watch TV with her. Although she prefers to be by herself, the record does not show that the claimant has any difficulty interacting with others. She is able to use public transportation and go shopping. The claimant denied that she has ever experienced panic in public (Ex. B6F, p. 3).
>
> The claimant has participated in treatment for her physical impairments, which has been effective. Treatment notes from March 2015 indicate resolution of the claimant's neck pain (Ex. B1F, p. 2). In May 2015, Dr.

---

[4] The two-step process involves: (1) determining whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms; and (2) evaluating the intensity and persistence of an individual's symptoms, and determining the extent to which those symptoms limits his or her ability to perform work-related activity. SSR 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). With respect to the second step, considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ will "examine the entire case record, including the objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

> Morris reported that the claimant's cervical radiculopathy had improved with physical therapy and the claimant was only experiencing occasional numbness in her right arm (Ex. B11F, p. 1). Treatment notes indicate that the claimant had normal strength and reflexes (Ex. B1F, p. 7). The claimant has injections in her knee, and she testified that she continues to receive injections in her knee every six months (Testimony). Her mental impairments are adequately addressed by the limitation to simple tasks and reduced pace. The claimant has shown resistance to attending a PROS program (Ex. B18F, p. 3). Her resistance to treatment suggests that her mental health problems are not as limiting as alleged. The record shows that the claimant is able to perform work requiring sedentary exertion. It does not support a finding that the claimant is disabled.
>
> In sum, the above residual functional capacity assessment is supported by the medical evidence, the claimant's acknowledged activities and approach to treatment, and by the supported aspects of the opinion evidence. No additional limitations are warranted.

(Tr. 21-25)

Contrary to Plaintiff's assertion, the ALJ did not "fail[ ] to identify any relevant objective evidence that is inconsistent with Plaintiff's allegations." (Dkt. No. 11-1 at 29) The ALJ explicitly assessed the consistency of Plaintiff's subjective complaints in accordance with the regulatory framework. While Plaintiff may disagree with the ALJ's assessment, "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll v. Sec'y of Health and Human Servs.* 705 F.2d 638, 642 (2d Cir. 1982). A court must uphold the Commissioner's decision to discount a claimant's complaints of pain and other subjective complaints if the finding is supported by substantial evidence, even if the reviewing court might have held differently if presented with the same set of facts. *Aponte*, 728 F.2d at 591 (citations omitted); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported

17

by substantial evidence, shall be conclusive."). In this case, the ALJ's findings regarding the consistency of Plaintiff's subjective complaints with the evidence of record were supported by substantial evidence, and remand is not warranted on this basis.

In summary, the Court finds that the ALJ's decision was free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   April 13, 2020
         Buffalo, New York

                                          MICHAEL J. ROEMER
                                          United States Magistrate Judge